IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| WILLIAM BUSH, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | CASE NO. 2:12-CV-345-WKW |
| ) | [WO] |
| KIM T. THOMAS, Commissioner, ) | |
| Alabama Department of Corrections, ) | |
| *et al.*, ) | |
| ) | |
| Respondents. ) | |

**MEMORANDUM OPINION AND ORDER**

Before the court are Respondents' request, *see* Resps.' Amend. Ans. (Doc. # 34) and Resps.' Br. on Procedural Defaults (Doc. # 35), that one of Petitioner's claims in his petition for habeas corpus relief be dismissed as procedurally barred and "Petitioner's Motion for an Evidentiary Hearing on his Mental Retardation Claims" (Doc. # 45). For the following reasons, the claim challenged by Respondents is not procedurally defaulted, and Petitioner is not entitled to an evidentiary hearing at this time.

**I. RESPONDENTS' ASSERTION OF PROCEDURAL DEFAULT**

   **A.   Background**

Petitioner is a death-sentenced inmate in the State of Alabama. He was convicted of the capital offense of murder committed during the course of a robbery

and sentenced to death by the trial judge over the jury's unanimous recommendation of a life-without-parole sentence. *Bush v. State*, 695 So. 2d 70, 81 (Ala. Crim. App. 1995).[1] He unsuccessfully sought post-conviction relief in the state courts pursuant

---

[1] The procedural history of Petitioner's case is far more complex and detailed than recounted here, and includes multiple trials in the state court and a previous, successful, petition for habeas corpus relief in this court. *See Bush*, 695 So. 2d at 80–81. Because this order concerns Respondents' assertion of a procedural defense pertaining to only one of Petitioner's claims and will not dispose, therefore, of the petition, the court will leave a more thorough recitation of the procedural history of this case to its anticipated subsequent order ruling on the petition for habeas corpus relief. Briefly, the trial evidence underlying Petitioner's conviction and sentence is recounted in *Bush* as follows:

> The state presented evidence showing that around 3:00 a.m., on July 26, 1981, the appellant and a companion, Edward Lewis Pringle, entered the Majik Market convenience store on Carter Hill Road in Montgomery, Alabama, with the intent to rob the cashier of money to buy drugs. When they entered, two people were in the store: Larry Dominguez, the store clerk, and his friend Tony Holmes. Dominguez was in the restroom. The appellant pointed a pistol at Holmes and forced him toward the restroom at the rear of the store. When Dominguez opened the restroom door, the appellant shot both Dominguez and Holmes. The appellant then returned to the front of the store and attempted unsuccessfully to open the cash register. Dominguez stumbled out of the restroom, and the appellant shot him again. Before departing, the appellant took two bags of "zodiac sign tags" from a rack behind the counter near the cash register. The first shot striking Dominguez passed through his chin, lodging in his neck and severing a large artery. The second shot striking Dominguez entered his right shoulder and passed through his lungs and heart. He died quickly at the scene from the injuries caused by the second shot; however, the injuries sustained as a result of the first shot were potentially fatal. Holmes was shot in the throat and, although seriously injured, he survived. He was able to describe his assailant, the pistol, and the automobile the assailants were driving. He described the automobile as a 1973 white-over-green Chevrolet Monte Carlo and the pistol as a nickel-plated .38 caliber short-barreled special.
>
> After leaving the Majik Market, the appellant and Pringle drove to a nearby Seven–Eleven convenience store on Narrow Lane Road in Montgomery, arriving there sometime before 4:00 a.m. The appellant entered the store and purchased a package of Kool cigarettes from the clerk, Thomas Adams. After Adams opened the cash register, the appellant forced him into an office area behind the counter and shot him in the neck with the same pistol he had used to shoot Dominguez and Holmes.

2

to Rule 32 of the *Alabama Rules of Criminal Procedure.  See Bush v. State*, 92 So. 3d 121 (Ala. Crim. App. 2009).  On April 16, 2012, Petitioner filed the instant petition for habeas corpus relief (Doc. # 1).  On August 7, 2012, Respondents filed their answer to the petition, in which they asserted that certain of Petitioner's claims are procedurally defaulted from review in federal habeas corpus proceedings, including portions of Claim G, Petitioner's claim that he was denied the effective assistance of counsel, and the entirety of Claim I, Petitioner's claim that his execution after serving more than thirty years on death row would constitute cruel and unusual punishment because of "inordinate delay" he attributes to state actors.  *See* Ans. (Doc. # 24) at 30–33, 38–39.  On August 31, 2012, the Magistrate Judge entered an order

---

> The shot to Adams's neck shattered his spinal cord and killed him instantly.  When the shot was fired, the barrel of the pistol was either touching Adams's neck or within a fraction of an inch of it.  The appellant took between $20 to $30 from the cash register, along with a bank bag and checks.
>
> The appellant made a statement to the police in which he confessed to the crimes.  Although in his first statement he claimed that Pringle was the triggerman in both shootings at the Majik Market and that he was the triggerman in the collateral capital offense at the Seven–Eleven store, in his second statement, he admitted that he fired the shots that killed Dominguez and Adams and that wounded Holmes.  In assisting the officers in recovering the weapon, the appellant said to Officer R.T. Ward, when the pistol was recovered, "[T]hat's the weapon that was used to shoot all three people."  Ballistic tests of the pistol – a nickel-plated .38 caliber short-barreled special – proved that it was the pistol that fired the shots in the commission of the three crimes.

*Id.* at 81–82 (internal footnotes omitted).

(Doc. # 31) instructing the parties to "file briefs solely on procedural default issues" so that the court might "decide those issues prior to the parties filing briefs on the merits and other issues in this matter."

On October 1, 2012, Respondents filed their brief on procedural defaults (Doc. # 35) and an amended answer (Doc. # 34). In the brief and amended answer, Respondents explain that the "State withdraws its assertion of procedural defaults against Bush's claims that trial counsel rendered ineffective assistance for failing to present allegedly mitigating evidence regarding his alleged intellectual deficiencies and his alleged alcohol and drug use." Resps.' Br. (Doc. # 35) at 1. Accordingly, Respondents' brief asserts a procedural defense against only Petitioner's Eighth Amendment challenge to his execution premised on the "inordinate delay" he attributes to the State of Alabama. On October 30, 2012, Petitioner filed his brief in response (Doc. # 36), asserting that his Eighth Amendment claim is not procedurally barred. Despite the scheduling order's provision for the filing of a reply brief, Respondents failed to file a reply. The matter is now ripe for resolution.

### B. <u>Legal Standards Applicable to Procedural Default Defenses</u>

Procedural default of a claim in a federal habeas petition can result from a number of circumstances arising in the state courts. In this instance, Respondents contend that Petitioner's Eighth Amendment "claim is procedurally defaulted because

4

it was raised for the first time in Bush's habeas petition, and thus, Bush did not fairly present it as a federal claim in the state court." Resps.' Br. (Doc. # 35) at 3. Respondents' procedural defense, therefore, entails the related but distinct concepts of exhaustion and procedural default. Those doctrines and how they are related are discussed below.

A state prisoner seeking federal habeas corpus relief must first exhaust the remedies available to him in the state courts before seeking relief in federal court. 28 U.S.C. § 2254(b)(1)(A). "The prisoner exhausts his state remedies by presenting his constitutional claim to the State courts, to afford them an opportunity to correct any error that may have occurred." *Hardy v. Comm'r, Ala. Dep't of Corr.*, 684 F.3d 1066, 1074 (11th Cir. 2012) (citing *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (*per curiam*)). Courts generally require that the "opportunity" to resolve federal constitutional claims in the state courts be "full and fair." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). Hence, the state prisoner must generally alert the state courts to the federal nature of a given claim. *Duncan*, 513 U.S. at 365–66 ("If state courts are to be given the opportunity to correct alleged violations of prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution."). To do this, "a claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well

as a statement of the facts that entitle the petitioner to relief." *Gray v. Netherland*, 518 U.S. 152, 162–63 (1996). In addition, with respect to each claim, the state prisoner must "invok[e] one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 845. This requirement obliges the state prisoner to seek even discretionary review in the State's highest court, provided that such "review is part of the ordinary appellate review procedure in the State[,]" in order to exhaust federal habeas corpus claims in the state courts. *Id.* at 847.

Because a federal court may not grant habeas corpus relief when the Petitioner has not exhausted available state remedies, "[i]f a petitioner fails to exhaust his state remedies, a district court must dismiss the petition without prejudice to allow for such exhaustion." *Gore v. Crews*, 720 F.3d 811, 815 (11th Cir. 2013). If state remedies are no longer available to the state prisoner due to state procedural limitations, the unexhausted claim is generally treated as exhausted but procedurally defaulted from federal habeas review. *Id.* at 816 ("An unexhausted claim is not procedurally defaulted unless it is evident that any future attempts at exhaustion would be futile due to the existence of a state procedural bar."); *see also McNair v. Campbell*, 416 F.3d 1291, 1305 (11th Cir. 2005) ("It is well established that when a petitioner has failed to exhaust his claim by failing to fairly present it to the state courts and the

state court remedy is no longer available, the failure also constitutes a procedural bar.").

A federal court may consider a procedurally defaulted claim only if the Petitioner can show (1) cause for the procedural default in the state courts and prejudice flowing from the asserted federal violation, or (2) that a fundamental miscarriage of justice will result if the federal claim is not considered on its merits. *Bishop v. Warden, GDCP*, 726 F.3d 1243, 1258 (11th Cir. 2013). "As a general matter, 'cause' for procedural default exists if 'the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule.'" *Id.* (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). A petitioner may achieve this threshold by showing, for instance, that "the factual or legal basis for a claim was not reasonably available to counsel, or that some interference by officials made compliance impracticable." *Murray*, 477 U.S. at 488 (citations and quotations omitted). Likewise, the ineffective assistance of counsel may constitute "cause" for a procedural default of a federal claim in the state courts. *Id.*

In addition to cause, the habeas petitioner must demonstrate actual prejudice to overcome a procedural default. "Actual prejudice means more than just the possibility of prejudice; it requires that the error 'worked to his *actual* and substantial

disadvantage, infecting his entire trial with error of constitutional dimensions.'" *Ward v. Hall*, 592 F.3d 1144, 1178 (11th Cir. 2010) (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)).

Finally, a federal court may review a procedurally defaulted habeas claim on the merits, even in the absence of cause or prejudice, if necessary to remedy a "fundamental miscarriage of justice." A fundamental miscarriage of justice occurs if a "constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray*, 477 U.S. at 496. To show a fundamental miscarriage of justice based on asserted actual innocence, the petitioner must "support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

### C.  Application

As mentioned above, Respondents appear to contend that Petitioner's Eighth Amendment challenge is procedurally defaulted because it was first raised in his federal habeas corpus petition and that, therefore, because Petitioner "did not present this claim as [a] federal claim in the state court, he did not give the state courts a fair opportunity to decide it." Resps.' Br. (Doc. # 35) at 3. Respondents further argue that dismissal of the petition to permit Petitioner to return to state court and exhaust

the claim "would be futile because he would be barred from raising it in state court under Rule 32.2(c) of the Alabama Rules of Criminal Procedure (statute of limitations bar) and Rule 32.2(b) of the Alabama Rules of Criminal Procedure (successive petition bar)." *Id.* at 3–4. As the claim is now barred by adequate and independent state procedural rules, Respondents maintain, it is "procedurally defaulted from habeas review" and should be dismissed barring a showing of cause and prejudice for the purported procedural default. *Id.* at 4. Petitioner argues that he did, in fact, raise the claim in the state courts and that the claim was also decided on its merits in the state courts. Pet'r's Br. (Doc. # 36) at 3–4. Thus, he asserts, "the claim is properly preserved for federal review and is not procedurally defaulted." *Id.* at 4.

Indeed, Petitioner did first present his Eighth Amendment claim in his brief in support of his petition for writ of certiorari to the Alabama Supreme Court during direct review of his conviction. Petitioner introduced the text of Section XVIII with the following summary:

> IT WOULD CONSTITUTE CRUEL AND UNUSUAL PUNISHMENT TO EXECUTE WILLIAM BUSH AFTER HE HAS ALREADY SPENT 15 YEARS ON DEATH ROW, ENDURING SIX EXECUTION DATES AND TWO NEAR-EXECUTIONS, WITH HIS CASE STILL ONLY ON DIRECT APPEAL, WHERE SUCH DELAY IS ATTRIBUTABLE TO CONSTITUTIONAL VIOLATIONS BY THE STATE

R.-35, Vol. 19, at 72.  In the brief, Petitioner described his then already lengthy stay on Alabama's death row and the multiple instances in which a scheduled execution appeared imminent.  *Id.*  He also attributed the unusual "delay" in having his case heard on direct appeal to the "constitutional violations by the prosecutor and trial judge," which caused state appellate courts and a federal district court to overturn his convictions and twice order new trials.  *Id.* at 73–75.  Petitioner premised his claim on the opinion of Justices Stevens and Breyer respecting the denial of certiorari in *Lackey v. Texas*, 514 U.S. 1045 (1995).  *See* R.-35, Vol. 19, at 75.  In that opinion, Justice Stevens discussed the potential merit of a claim alleging that "executing a prisoner who has already spent some 17 years on death row violates the Eighth Amendment's prohibition against cruel and unusual punishment[,]" but ultimately concluded that the issue should first be addressed by the other courts rather than the Supreme Court in the first instance.  514 U.S. at 1045.  Buoyed by *Lackey* and subsequent developments in that case and *Porter v. Singletary*, 49 F.3d 1483 (11th Cir. 1995) (per curiam), Petitioner argued before the Alabama Supreme Court that executing him "following the inordinate delay attributable to the state would violate his right against cruel and unusual punishment, his right to due process, and other rights safeguarded by the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution . . . ."  R.-35, Vol. 19, at 78.  It is evident therefore, that,

contrary to Respondents' argument, this claim was not "raised for the first time in Bush's habeas petition." Resps.' Br. [Doc. # 35] at 3.[2]  In addition, as argued by Petitioner, the Alabama Supreme Court opted to grant certiorari review of Petitioner's Eighth Amendment claim and ultimately denied the claim on its merits. *See Ex parte Bush*, 695 So. 2d 138, 139–40 (Ala. 1997).

For the foregoing reasons, this claim was presented in the state courts and decided on its merits by the Alabama Supreme Court, and, therefore, the claim is not procedurally defaulted from review in federal habeas corpus.[3]  Accordingly, after

---

[2] Respondents' contention in this court is especially confounding considering that, in responding to the petition for certiorari review in the Alabama Supreme Court, the State specifically argued that this claim "is raised for the first time before this Court, having not been asserted in the Court of Criminal Appeals." R.-36, Vol. 20, at 146. The State went on to argue that "the claim is without merit and due to be denied." *Id.*  Thus, not only did Petitioner raise his Eighth Amendment claim in the state courts, but the State recognized and argued against the merits of the claim in its briefing to the Alabama Supreme Court.  Nevertheless, Respondents have not replied to Petitioner's response to their procedural default argument and have not filed a second amended answer revoking their procedural default defense as to this claim.

[3] Because Respondents did not reply to Petitioner's response, Respondents have not presented any argument about whether Petitioner's Eighth Amendment claim might be procedurally defaulted because he presented it, for the first and only time, in the Alabama Supreme Court during certiorari proceedings. *See Castille v. Peoples*, 489 U.S. 346, 349–51 (1989) (quoting Pa. Rule App. P. 1114) (holding that, "where the claim has been presented for the first and only time in a procedural context in which its merits will not be considered unless 'there are special and important reasons therefor[,]'" as in a petition seeking discretionary review before a state's highest court, the claim has not been fairly presented to the state courts and, therefore, will not satisfy the exhaustion requirement); *see also Mauk v. Lanier*, 484 F.3d 1352, 1358 (11th Cir. 2007) (holding that a claim first presented in a petition for certiorari review before the Georgia Supreme Court was not fairly presented and exhausted in the state courts for purposes of federal habeas).

However, two points disfavor application of the rule of *Castille* and *Mauk* in this case. First, although the current rules governing the Alabama Supreme Court's exercise of its discretionary

appropriate briefing by the parties, the court will consider whether the Alabama Supreme Court's decision denying the claim is "contrary to, or involved an unreasonable application of, clearly established Federal law" or is "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1) & (2).

---

certiorari authority are markedly similar to the Pennsylvania rules at issue in *Castille*, *compare Castille*, 489 U.S. at 347, *with* Ala. R. App. P. 39(a), at the time Petitioner filed his petition for certiorari review in the Alabama Supreme Court, such review was mandatory, not discretionary, unlike the allocatur review process in Pennsylvania at issue in *Castille*. The Court Comment to Rule 39 of the Alabama Rules of Appellate Procedure states that the Rule was amended in 2000 to remove "the provision in the former Rule 39(c) that provided that a petition for a writ of certiorari to the Supreme Court in a case in which the death penalty was imposed would be granted as a matter of right."

Second, to the extent the Alabama Supreme Court might still have exercised some discretion in granting certiorari on Petitioner's Eighth Amendment claim, *Castille* and *Mauk* still would not compel a procedural default of the claim because the Alabama Supreme Court proceeded to grant certiorari and decide the claim on its merits, thereby effecting a sort of exception to the exhaustion requirement. *Castille* itself appears to recognize this circumstance as a "reasonabl[y] infer[red]" exception to the statutory exhaustion requirement, which would otherwise require a Petitioner to seek collateral relief in the state courts on a claim that has already been decided by the state's highest court on direct review. *See* 489 U.S. at 351. Other appellate courts have recognized this exception explicitly. *See, e.g., Casey v. Moore*, 386 F.3d 896, 916 n.18 (9th Cir. 2004) ("Of course, a claim is exhausted if the State's highest court expressly addresses the claim, whether or not it was fairly presented.") (citing *Castille*, 489 U.S. at 351). Because the exhaustion requirement is itself "grounded in principles of comity[,]" *Mauk*, 484 F.3d at 1357, courts may reasonably infer that a claim already decided on the merits by the state's highest court, whether fairly presented in one complete round of the state courts' review process or not, is exhausted for purposes of federal habeas review and is therefore not subject to the procedural bars potentially applicable to claims which were similarly presented, but not considered, in discretionary review. *See Castle v. Schriro*, 414 F. App'x 924, 926 (9th Cir. 2011) (unpublished decision) ("Only if the appellate court goes ahead and considers the new issue on its merits are the interests of comity satisfied such that the federal court can properly consider the issue under 28 U.S.C. § 2254(b)(1)(A).").

## II.  PETITIONER'S MOTION FOR AN EVIDENTIARY HEARING ON HIS MENTAL RETARDATION CLAIMS

Petitioner seeks "a hearing in which he may present evidence relevant to his cognitive deficits, limited adaptive functioning, and early onset thereof in order to establish his mental retardation claims."  Pet'r's Mot. (Doc. # 45) at 1.  Relying on the Eleventh Circuit's recent decision in *Burgess v. Commissioner, Alabama Department of Corrections*, 723 F.3d 1308, 1320–22 (11th Cir. 2013), he argues that, although he was able to present his mental retardation claim in the state courts, because he was denied, despite his diligent efforts, the opportunity to present the sort of evidence required to prove the claim, he is now entitled to an evidentiary hearing in this court in order to finally prove the claim.  Pet'r's Mot. (Doc. # 45) at 1–2.

Petitioner's motion is premature at this point.  Petitioner concedes that his claim was decided – even if incorrectly or unfairly – on its merits in the state courts.  *See* Pet'r's Supp. Br. (Doc. # 46) at 3–6.  He has alleged that this decision "'resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States,' and 'resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'"  Pet. (Doc. # 1) ¶ 117 (quoting § 2254(d)(1) & (2)).  Because this claim was decided on the

merits in the state court, this court must first determine whether that decision can survive review under § 2254(d). Petitioner is not entitled to present new evidence, including the conduct of an evidentiary hearing, on his mental retardation claim unless and until this court concludes its initial inquiry under § 2254(d) in his favor. *See Cullen v. Pinholster*, ___ U.S. ___, 131 S. Ct. 1388, 1398–99 (2011) ("We now hold that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits."); *id.* at 1400 ("[E]vidence introduced in federal court has no bearing on § 2254(d)(1) review. If a claim has been adjudicated on the merits by a state court, a federal habeas petitioner must overcome the limitation of § 2254(d)(1) on the record that was before that state court.").[4] *See also Hill v. Humphrey*, 662 F.3d 1335, 1363–64 (11th Cir. 2011) (Tjoflat, J., specially concurring).

In *Burgess*, the Eleventh Circuit structured its analysis in this same fashion. The court first determined that the district court incorrectly found that the applicable state court decision rejecting Burgess's mental retardation claim survived § 2254(d) scrutiny. 723 F.3d at 1315–19. In doing so, the Eleventh Circuit limited itself to the

---

[4] To the extent *Cullen* is expressly concerned with review pursuant to § 2254(d)(1), it is clear from the text of § 2254(d)(2) that review of the reasonableness of a state court factual determination under that provision is similarly circumscribed by "the evidence presented in the State court proceeding." *See also Cullen*, 131 S. Ct. at 1400 n.7.

record that was before the state court at the time of its decision. *Id.* at 1315–16 ("After careful review of the record before the state court, we disagree with the district court and hold that the ruling of the Alabama Court of Criminal Appeals that Burgess is not mentally retarded was an 'unreasonable determination of the facts' in this case."); *id.* at 1319 ("We hold that the state court's determination that Burgess is not mentally retarded is an unreasonable determination of fact because it was based upon a combination of erroneous factual findings directly contradicted by the record and a record that was insufficient to support its conclusions."). Only after it determined that the state court decision could not survive scrutiny under § 2254(d)(2) did the Eleventh Circuit proceed to determine whether Burgess was entitled to an evidentiary hearing on his mental retardation claim. *Id.* ("Because we have determined that the finding by the Alabama Court of Criminal Appeals that Burgess is not mentally retarded is not entitled to AEDPA deference, the district court erred in deferring to that conclusion. Accordingly, we must address whether the district court also erred in refusing to hold an evidentiary hearing.").

Similarly, this court cannot grant Petitioner an evidentiary hearing on his mental retardation claim unless and until the court has determined, as in *Burgess*, that the state court's decision denying his claim on the merits cannot withstand scrutiny under § 2254(d)(1) or (2). Because the parties have not yet briefed this issue in this

15

court, Petitioner's request for an evidentiary hearing is premature. Accordingly, Petitioner's motion will be denied at this time, subject to reconsideration in the event that the court concludes that the Alabama Court of Criminal Appeals' decision denying his mental retardation claim cannot survive application of § 2254(d).

### III.  CONCLUSION

For the foregoing reasons, none of the claims alleged in the petition for habeas corpus relief is subject to procedural default. Moreover, Petitioner's motion for an evidentiary hearing on his mental retardation claim is premature, as the parties have not yet even briefed the merits of that, or any other, claim in the petition. Accordingly, it is ORDERED as follows:

(1)  Respondents' request for dismissal of Petitioner's Claim I is DENIED;

(2)  "Petitioner's Motion for an Evidentiary Hearing on his Mental Retardation Claims" (Doc. # 45) is DENIED without prejudice because it is premature;

(3)  Petitioner shall file his initial brief on the merits, in which he is to demonstrate why he is entitled to relief on each of his claims pursuant to the standards set forth in 28 U.S.C. § 2254(d), on or before **March 31, 2014**;

(4)  Respondents shall file their brief responding to Petitioner's brief on the merits on or before **May 12, 2014**; and

(5) Petitioner shall file any reply to respondents' brief on or before **May 27, 2014**.

DONE this 20th day of February, 2014.

                                         /s/ W. Keith Watkins
                                CHIEF UNITED STATES DISTRICT JUDGE